FORTEZA, PROMOVENTE Y APELANTE, *v.* JIMÉNEZ, OPOSITOR Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Humacao en un expediente de dominio.

No. 1594.—Resuelto en julio 24, 1917.

EXPEDIENTE DE DOMINIO—CANCELACIÓN DE INSCRIPCIÓN—TERCEROS—PARTICIÓN DE HERENCIA—TRASPASO—VENTA HECHA POR UNA SUCESIÓN—POSESIÓN.—En un expediente de dominio, el tribunal no puede ordenar la cancelación de una inscripción que aparece a nombre de terceras personas en el registro de la propiedad, y tal procedimiento no es el medio adecuado para conseguir la partición del caudal hereditario o para obligar a los coherederos interesados a otorgar una escritura formal de traspaso de una parte del mismo; pero ni de una ni de otra proposición se desprende que el dueño de un predio de terreno segregado y vendido por los miembros de una sucesión casi veinte años con anterioridad a la radicación del expediente de dominio, no pueda justificar esos hechos probando tal posesión y obtener una resolución creditiva de su dominio.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. *Rafael Arce.*

Abogado del apelado: Sr. *Francisco González.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Benjamín Forteza Segura ha establecido recurso de apelación de una sentencia que declara no justificado el dominio que alegó tener sobre 6⅛ cuerdas de terreno que compró a Antonio Jiménez Sicardó.

El cuarto motivo de error consiste en que la sentencia es contraria a la prueba, y por razón del criterio que adoptamos del caso, estimamos que no es necesario considerar los demás.

En 12 de marzo de 1888 la Sucesión de Manuel Jiménez Córdova, a saber, Manuel, representada por su viuda Doña Eladia Cruz, Doña Gertrudis, Doña Agustina, Don Pedro, Don Francisco, Don José, Don Juan, Don Antonio, Doña Josefa Jiménez Sicardó y Doña Providencia Lizardi, obtuvo a su favor una resolución de título posesorio de una parcela de terreno de 365 cuerdas, compuesta de dos fracciones, una de 240 cuerdas y la otra de 125 cuerdas.

En 20 de septiembre de 1889, Doña Providencia Lizardi Jiménez falleció sin dejar descendencia y su participación en el caudal hereditario pasó a su padre Ignacio Lizardi, que también falleció algunos meses después.

El apelado insiste en que el interés así adquirido por el padre era un bien reservable sujeto a una posible reversión a su fallecimiento, en virtud de ciertas circunstancias imaginables las que no se ha demostrado existan en el presente caso, bajo las peculiares prescripciones del artículo 811 del Código Civil Español en vigor en aquella fecha, pero nosotros, en vista de los hechos desarrollados en el juicio, no podemos ver cómo esta proposición legal, sin nada más, pueda crear un obstáculo a los procedimientos en este caso.

En 10 de diciembre de 1889, Ignacio Lizardi otorgó un documento notarial a favor de Pascual Borrás, que según alega el apelante es una escritura de traspaso de las 6⅛ cuerdas de terreno envueltas en esto caso, comúnmente llamadas y designadas "Maturí," las que, a pesar de haber for-

mado parte originalmente de la mayor de las dos fracciones de terreno, supra-mencionadas, estaba en realidad de verdad separada por un río del cuerpo principal a que pertenecía, y se alega que en efecto fué segregada, adjudicada y entregada a Lizardi constituyendo *pro tanto* su interés en la herencia.

La contención planteada por el apelado es la de que esta fracción de 6⅛ cuerdas de terreno aún forma parte de la parcela de mayor extensión superficial que aparece en el registro a nombre de la sucesión, la cual parcela de mayor extensión de terreno, se dice jamás fué dividida.

Según parece en junio 10 de 1890 y en virtud de la resolución posesoria supra-mencionada, las 365 cuerdas, en apariencias gravosamente hipotecadas, fueron inscritas a nombre de la sucesión incluyendo a Doña Providencia Lizardi, que en aquella fecha ya era difunta, como miembro de dicha sucesión; y con arreglo a una nota marginal y asientos subsiguientes, la fracción de 240 cuerdas de terreno parece haberse reducido a 185 cuerdas o menos, y se ha calculado que bajaba hasta 169½ cuerdas, mientras que el resto de las 125 cuerdas fué segregado e inscrito como una finca separada que aparece haber pasado a otras manos en pago de una deuda hipotecaria.

En verdad, haciendo caso omiso por un momento de la controversia respecto a las 6⅛ cuerdas, se admite sustancialmente por todos los interesados que del caudal original sólo queda un poco más de 50 cuerdas, de las cuales 10 cuerdas están en posesión del apelado, quien paga contribuciones por las mismas y sostiene que las retiene bajo entrega provisional de la misma pendiente la partición y adjudicación de todos los bienes hereditarios, mientras que otros de los miembros de la sucesión dicen que tal entrega fué hecha en plena y definitiva adjudicación de la participación hereditaria del apelado y que lo único que faltaba era el otorgamiento de un documento formal.   Las 40 y pico de cuerdas restantes están en posesión del vendedor del apelante, quien

continúa pagando las contribuciones a nombre de la sucesión y según el apelado, así la retiene, mientras el apelante aparentemente entiende que no existen intereses encontrados.

El siguiente es un extracto· de la escritura otorgada en 11 de septiembre de 1895 por Pascual Borrás en favor de Antonio Jiménez, vendedor del peticionario:

"*Primero*. Que por escritura pasada ante mi fe en diez de diciembre de mil ochocientos ochenta y .nueve, Don Ignacio Lizardi y Delgado, cedió y traspasó en favor del compareciente Borrás y Llacer todas las acciones y derechos hereditarios que a aquél correspondieron por virtud del fallecimiento de su legítima hija Doña Providencia Lizardi y Delgado, que falleció en esta ciudad, en estado de soltería, sin dejar descendientes; y como quiera que la madre de ésta había fallecido también con anterioridad, vino a sucederle su referida hija en todos sus derechos, como universal heredera en seis cuerdas y ·doce y medio centavos de otra de terreno, o sean 2 hectáreas, 80 áreas y 83 centiáreas, sitas en el barrio de Cagüitas, de este término y colindantes por el saliente, con B. Borrás Hermanos, por el sur, con Don Nicolás Muñoz y Doña Encarnación Jiménez; y por el norte y poniente con el río de Cagüitas que la divide de otros terrenos de la sucesión Jiménez Córdova o sea sucesión de Don Andrés García, cuya vega lleva el nombre de Maturí. Todo así consta de la escritura expresada de 10 de diciembre del 89, de la cual obtienen en el día de hoy primera copia para presentarla en las oficinas liquidadoras del impuesto de derechos reales y trasmisión de bienes para pagar a la hacienda pública el impuesto correspondiente.

"*Segundo*. Por libre de gravamen y en la misma forma en que fueron adjudicadas las seis cuerdas y doce y medio centavos de terreno referidas, tiene convenido el compareciente Señor Borrás con el otro Jiménez Sicardó, cesión y formal traspaso de las acciones y derechos que tiene adquiridos sobre el inmueble descrito; y para que tenga efecto lo verifican por medio de la presente escritura pública y el Señor Borrás y Llacer, otorga; que cede, renuncia y traspasa a Don Antonio Jiménez Sicardó y sus causahabientes los derechos y acciones que tiene sobre ese terreno, subrogándolo en su propio lugar y derecho, grado y prelación, con el poder más amplio que necesite para llevar a cabo por sí todas las diligencias ·a que diere lugar ·esta cesión que realizan por cantidad de quinientos treinta y cinco dollars, moneda corriente que el cedente con-

fiesa en este acto haber recibido del cesionario antes de ahora, a favor de quien por esa cantidad le otorga carta de pago, y declaro yo, el notario, para conocimiento de los otorgantes que confesado como lo está el pago del precio de esta cesión queda el terreno libre de toda responsabilidad, aunque se pruebe en adelante no ser cierta la entrega en toda ni en parte.

"*Tercero.* Es convenido que si dentro del término de un año contado desde hoy y vencerá en once de septiembre del noventa y seis, el Señor Borrás devuelve al otro Jiménez Sicardó los quinientos treinta y cinco dollars, importe de esta cesión, estará éste en la obligación de restituirle la finca cedida; pero si no lo hiciere, se consolidará desde luego la presente cesión.

"*Cuarto.* También es convenido que durante el tiempo de la retrocesión, el Señor Jiménez Sicardó permitirá al Sr. Borrás el acarreo de cañas por el terreno expresado, sin oposición alguna."

El documento anterior no fué copiado en el récord, sino que se refiere a la relación del caso como uno de los instrumentos de la evidencia documental, y que se describe de un modo algo vago, como sigue:

"Escritura número 235, de diez de diciembre de 1889, sobre cesión y traspaso otorgada por Ignacio Lizardi Delgado en favor de Don Pascual Borrás Llacer, ante el notario Francisco Jiménez Prieto. En esa escritura se transfiere a Borrás Llacer la herencia de Providencia Lizardi, como sucesora de Ana Jiménez Sicardó limitándose tal derecho hereditario a seis cuerdas y doce centavos y medio de terreno en el barrio de 'Cagüitas,' de Caguas.

"Aparece de dicha escritura que Lizardi, como heredero de su hija Providencia, limitó la venta a Borrás a las dichas seis cuerdas y doce y medio centavos, declarando que el resto de sus derechos hereditarios los había traspasado a Doña Agustina Jiménez Sicardó."

Una relación completa del voluminoso historial de las participaciones individuales proindivisas según aparece del registro de la propiedad nos parece superflua. Sin embargo, de paso siquiera, haremos mención por los méritos que pueda tener de una circunstancia algo curiosa. En 26 de mayo de 1910 el Juez Municipal de Caguas dictó una resolución posesoria de una finca de 78 cuerdas, de las 185 cuerdas antes dichas, a favor de Juan Arén comprador de Manuel Soto

Quiñones, quien, según se alega, había adquirido la parcela en controversia de la Sucesión Jiménez Córdova, habiéndose denegado su inscripción en el registro por la razón de que ciertos miembros de la sucesión mencionados en el registro, incluyendo a Doña Providencia Lizardi, no comparecieron en el traspaso del título. La inscripción 10ª. es por la que se inscribe dicho posesorio, por haber subsanado el defecto que produjo la denegatoria de inscripción, mediante haber sido citadas las personas siguientes: Doña Eladia Cruz Jiménez, en representación de su difunto esposo Don Manuel Jiménez Sicardó, Don Fernando Jiménez y Jiménez, como cesionario de los derechos de Don Francisco Jiménez Sicardó y de Don Pedro Jiménez Sicardó, Don Antonio Jiménez Sicardó por su propio derecho y como cesionario de los derechos de Don Juan Jiménez Sicardó, de Doña Josefa Jiménez Sicardó, de Don José Jiménez Sicardó y de los hermanos O'Neill Jiménez, hijos y únicos herederos de Doña Gertrudis Jiménez Sicardó, cuyas personas fueron citadas también como representantes de los derechos de Doña Agustina Jiménez Sicardó y de Doña Providencia Lizardi, que fallecieron, y por haberse dictado resolución con fecha diez de los corrientes por el juez municipal de esta ciudad, Don M. F. Chiqués confirmando la resolución de veinte y seis de mayo último, por la que se declaró justificada la posesión de la parcela de setenta y ocho cuerdas referida de esta finca, a favor de Don Manuel Castiñeira Arén.''

Si lo que pasó entre Lizardi y Borrás y entre Borrás y Antonio Jiménez, el vendedor del peticionario-apelante en este caso, no fué sino una cesión de una participación proindivisa en el caudal hereditario de la sucesión Jiménez Córdova, tal circunstancia parece habérsele pasado desapercibida a todas las partes interesadas en el procedimiento últimamente antes mencionado.

Por la declaración del promovente se ve, sin contradicción esencial alguna, que en 1889 Ignacio Lizardi estaba postrado en cama con un cáncer en la cara y en urgente necesi-

dad de dinero para operarse; que con el fin de conseguir los fondos necesarios los miembros de la sucesión, o aquellos inmediatamente accesibles, asumiendo la representación de los demás, convinieron en segregar y entregarle la parcela de terreno conocida por Maturí bajo la expresa inteligencia de que él iba a disponer de la misma inmediatamente por dinero al contado; que Borrás consultó con los miembros presentes antes de que la venta se consumase y entendió que compraba la finca; que poco después de lo ocurrido se le explicó a aquellos miembros que no estuvieron presentes en aquella ocasión, quienes expresamente ratificaron y aprobaron todo lo hecho; y que desde entonces, primero Borrás, luego su comprador Antonio Jiménez, y más recientemente el promovente, han permanecido en la posesión efectiva, notoria, pacífica y sin interrupción alguna y en el disfrute de dicha parcela de terreno en concepto de dueños y pagando las contribuciones de las mismas.

También aparece de la prueba que por cierto período de tiempo anterior a la compra de esta finca por parte del promovente, el apelado procuró por varios medios a su alcance inducir, si no obligarle por la fuerza de las circunstancias, que Antonio Jiménez le vendiese dicho terreno a él. Quizás el testimonio que más favorece al apelado sobre este punto es el de su abogado, quien por vía de contra-prueba, declaró como testigo lo siguiente:

"Como aquí se ha traído prueba testifical sobre una operación del Dr. Jiménez con Don Antonio Jiménez Sicardó, quiero hacer constar que yo intervine en esa operación con Don Fernando Jiménez, y se exigía, o mejor dicho se compraban los derechos que representaba la finca 'Maturí,' siempre que el dinero que entregaba el Doctor Jiménez se garantizara como una hipoteca, para que el título de esa finca se pudiera sanear, y una vez saneado el título por Don Antonio Jiménez Sicardó, de acuerdo con los demás interesados en la sucesión Jiménez Córdova, para que entonces el Señor Fernando Jiménez, que era el que compraba, cancelara esa hipoteca. Esos fueron los términos de la transacción que se trató

de hacer. Que no requirieron a los otros condueños para hacer ese contrato; no se llegó a concertar, pero fué convenido que si se hacía la transacción se traería la conformidad de los demás condueños.''

Lo más que puede decirse desde el punto de vista del apelado es, por lo tanto, que él reconoció ciertos defectos técnicos en el título del pedazo de terreno de 6⅛ cuerdas y deseaba estar seguro de que no habría oposición alguna para perfeccionarlo después de haberlo adquirido. Creemos se ha demostrado ser razonablemente probable que si Antonio Jiménez le hubiera vendido al apelado en los términos por él propuestos, no hubiera habido dificultad alguna en obtener una resolución declarativa del dominio en favor del apelado.

El juez que celebró la vista del caso no pone en tela de juicio la veracidad de los testigos del promovente, pero era de opinión de que por cuanto la finca principal de 185 cuerdas estaba inscrita a nombre de la sucesión, y por cuanto nunca llegó a dividirse formalmente el caudal hereditario, por tanto el promovente había equivocado el remedio y que el presente procedimiento no podía prosperar.

Cierto es que en un procedimiento para acreditar el dominio, el juez no puede ordenar la cancelación de una inscripción que aparece a nombre de terceras personas en el registro de la propiedad. *Toro* v. *Reg. de Mayagüez,* (pág. 472). También convenimos con el apelado y con la corte inferior de que no es éste el método apropiado para conseguir la partición del caudal hereditario o para compeler a los coherederos interesados a otorgar una formal escritura de traspaso de alguna participación en el mismo. Pero ni de una ni de otra proposición se sigue que el dueño de un pedazo de terreno segregado y vendido por los miembros de una sucesión casi con 20 años de anterioridad a la radicación del expediente de dominio no pueda justificar tales hechos probando tal posesión y obtener la resolución creditiva de su dominio.

La sentencia apelada debe ser revocada, y en su lugar

regístrese otra declarando justificado el dominio de la finca que se describe en la petición a favor del promovente.

> *Revocada la sentencia apelada, y dictada otra declarando justificado el dominio a favor del promovente de la finca de 6⅛ cuerdas que se describe en la petición.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.